## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **TREY ADKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00034 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MARCUS McCLANAHAN,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiff; Katherine DeCoster, Assistant Attorney General, Office of the Attorney General of Virginia, Abingdon, Virginia, for Defendant.*

In this action arising under 42 U.S.C.A. § 1983 (West 2012), the plaintiff seeks money damages against the defendant, a state police officer, who seized the plaintiff's bulldozer without a warrant or other court order.  At the time, the bulldozer carried political signs visible to the public supporting the plaintiff's candidacy for local office.  The defendant moved to dismiss the action for failure to state a claim, and the motion was referred to a magistrate judge, who has recommended that I grant the defendant's motion.  Because I find that under the circumstances alleged in the Complaint, a reasonable officer would not have believed probable cause existed to seize the plaintiff's property, I will reject the portions of the magistrate judge's Report and Recommendations finding that the defendant is entitled to qualified immunity and that the plaintiff has failed to state a

claim based on the alleged violation of his Fourth Amendment rights.  On the other hand, I will accept the magistrate judge's recommendation that the plaintiff has failed to state a claim upon which relief can be granted with respect to the alleged violation of his rights under the First Amendment.

I

The magistrate judge correctly summarized the allegations in the Complaint as follows:

> The plaintiff, Trey Adkins, was the Democratic candidate for the office of Supervisor for the Knox District of Buchanan County, Virginia, in the November 2011 election.  His Republican incumbent opponent was Terry Hall.  Hall's brother, Bobby Hall, was a Republican representative on the Buchanan County, Virginia, Electoral Board.  Tamara Neo was the Commonwealth's Attorney in Buchanan County, Virginia, running for reelection as the Republican candidate at that time.  Neo had been disqualified in her capacity as the Commonwealth's Attorney from prosecuting matters concerning Adkins. At all relevant times, Defendant McClanahan was an investigator with the Virginia State Police.

> Adkins was, and remains, engaged in the business of excavation and construction.  Beginning in the Spring of 2011, Sheila Dellinger stored a bulldozer at Adkins's place of business, with the understanding that Adkins would purchase the bulldozer if Dellinger was unable to secure another buyer.  In early July 2011, Terry Hall informed Dellinger that Adkins was using the bulldozer on a county job at Poplar Gap for which he was being paid a lot of money. Nonetheless, Dellinger took no action based on those statements.  On July 19, 2011, Neo, via her Facebook reelection page, asked

Dellinger:  "Sheila, [s]omeone told me you have an excavator that you loaned and the borrower will not return it.   Any truth to that?" Dellinger responded to Neo that Adkins was "supposed to be storing it, but I hear that he has been using it on Poplar Gap and also used it in Ky when they had that big flood a few months back.  I've been waiting on him to buy it but haven't heard from him.  Have been told he c[a]n't buy it, I don't know."  When Neo asked Dellinger whether she had given Adkins permission to use the bulldozer during the "storage" time, Dellinger responded "He took it to store it.  I didn't give him permission to use it.  That's why I was so surprised when 2 different men called me here and said he was using it.  One man was a Hall man from Hurley told me, he said 'he's making money off it while you are paying for it.'   PLEASE, PLEASE don't get him involved.  Oh, and he said 'I write the checks to him for the use of it on the Poplar Gap.'"   Later, on July 21, 2011, Neo again wrote to Dellinger via Neo's Facebook reelection page stating:  "got the info and Marcus will be visiting you soon, if he hasn't already."

Neo sent McClanahan to interview Dellinger on July 19, 2011. Dellinger told McClanahan that Terry Hall had informed her that Adkins had used the bulldozer on a job in Buchanan County on Poplar Gap and that Hall had written checks to Adkins for that work. Although McClanahan's interview notes state that Dellinger said she wanted to make a criminal complaint against Adkins and that she requested McClanahan to "tow" the bulldozer if he came across it being used, Dellinger now denies she made those statements to McClanahan.

Adkins alleges that, at some time after Dellinger's interview, McClanahan interviewed Buchanan County officials who informed him that Adkins had not used the bulldozer for work on Poplar Gap or other county projects as alleged by Terry Hall.  On August 22, 2011, Adkins purchased the bulldozer from Dellinger.  In September 2011, Adkins placed the bulldozer at Jackson Chapel Church in Pawpaw, Virginia, in Buchanan County, to make repairs to the road leading into the church.  The bulldozer carried signs visible to the public soliciting

votes for Adkins in the upcoming election.  On September 12, 2011, McClanahan, acting in his capacity as a Virginia State Police investigator, arrived at the Jackson Chapel Church and seized the bulldozer without a warrant.  Adkins alleges that, while at the church premises, McClanahan informed representatives of the church that Adkins had stolen the bulldozer.  Adkins further alleges that, at the time of the seizure, one or more of the Halls and/or allies of the Halls were present taking photographs and making phone calls throughout the county spreading the word that Adkins had been arrested.

Adkins filed this action against McClanahan alleging violations of his First, Fourth and Fifth Amendment rights.  More specifically, he alleges that McClanahan's warrantless seizure of the bulldozer without probable cause violated his right to be secure in his property and violated his right to due process.  He also alleges that the seizure, in conjunction with Adkins's political opponents, was done in an effort to violate his First Amendment rights to free speech and political association, utilizing the power of the state to unlawfully and wrongfully interfere with his political campaign.

*Adkins v. McClanahan*, No. 1:12cv00034, 2013 WL 461797, at *1-2 (W.D. Va. Feb. 6, 2013) (Sargent, J.) (footnotes omitted).

The magistrate judge found that although McClanahan did not have a warrant, he was entitled to seize the bulldozer under the plain view exception to the warrant requirement.  In reaching this conclusion, the magistrate judge found that based on the allegations in the Complaint, McClanahan had probable cause to believe that Dellinger owned the bulldozer and Adkins was using it without Dellinger's consent.  The magistrate judge further found that because McClanahan was acting in his official capacity and was permitted to seize the bulldozer

pursuant to the plain view doctrine, he was entitled to qualified immunity from suit.  Finally, the magistrate judge found that the alleged facts did not show that McClanahan seized the bulldozer in retaliation for Adkins's exercise of his First Amendment rights or in an effort to chill his exercise of such rights.[1]

Adkins timely filed objections to the magistrate judge's Report and Recommendations.  Adkins contends that the magistrate judge erred in her conclusions with respect to the existence of probable cause and the availability of qualified immunity.  Adkins also contests the magistrate judge's conclusion that the Complaint does not adequately aver a violation of his First Amendment rights. The objections have been fully briefed, and I have heard oral argument on the issues.

II

Where, as here, objection has been made to a magistrate judge's report and recommendation on a dispositive matter, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly  objected

---

[1]  Adkins indicated through counsel that he intends to voluntarily dismiss his Fifth Amendment claim.  Therefore, the magistrate judge did not discuss this claim in her Report, and Adkins has raised no objection related to this claim.  The Complaint also refers to the Equal Protection Clause, but no basis for that contention is apparent or was asserted by the plaintiff in his objections.  Accordingly, any causes of action based upon the Fifth Amendment or the Equal Protection Clause will be dismissed.

to." Fed. R. Civ. P. 72(b)(3). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on such a motion, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and must view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury,* 536 U.S. 403, 406 (2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford,* 119 F.3d 1156, 1159–60 (4th Cir. 1997). While state officials sued in their official capacities are not "persons" under § 1983, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989), state officials sued in their individual capacities are "persons" within the meaning of the statute and are not absolutely immune from suit, *Hafer v. Melo,* 502 U.S. 21, 31 (1991). A government official sued in his individual capacity under § 1983 may, however, be entitled to qualified immunity. *Id.* at 25 ("[O]fficials

sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.")

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cnty.*, *Md.*, No. 11-2192, 2013 WL 388125, at *4 (4th Cir. Feb. 1, 2013). Qualified immunity is immunity from suit rather than merely immunity from liability; therefore, the question of qualified immunity should be decided before trial. *Id.* A defendant asserting qualified immunity has the burden of proving the defense. *Id.* A court deciding the applicability of qualified immunity must determine "whether a constitutional violation occurred" and "whether the right violated was clearly established." *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013). Where a plaintiff "(1) allege[s] a violation of a right (2) that is clearly established at the time of the violation," a motion to dismiss on qualified immunity grounds must be denied. *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

The Fourth Amendment to the Constitution prohibits unreasonable seizures of a person's effects. U.S. Const. amend. IV. Property is seized whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466, U.S. 109, 113 (1984). As a general rule, a seizure of personal property is "*per se* unreasonable within the meaning of

the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983).  An exception to the general warrant requirement, known as the plain view exception, applies where (1) an officer views the item to be seized from a place where he is lawfully present, (2) the officer has a lawful right of access to the seized item, and (3) the incriminating character of the seized item is immediately apparent.  *Horton v. California*, 496 U.S. 128, 137 (1990). "[O]nly those items that are perceived to be contraband, stolen property, or incriminating in character" may be seized without a warrant under the plain view exception.  *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997).  The "immediately apparent" requirement means that police must have probable cause to believe the item is associated with criminal activity. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).   "[P]robable cause is a flexible, common-sense standard" that "requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain items may be contraband or stolen property or useful as evidence of a crime.'"  *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  Probable cause does not require certainty, nor does it require that the seized evidence is more likely than not to be contraband, stolen property, or evidence of a crime.  *Id.*   Probable cause does, however, require more than

-8-

reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330 (1990). In evaluating whether probable cause existed to support a seizure, the court must assess the totality of the circumstances. *Florida v. Harris*, No. 11-817, 2013 WL 598440, at *5 (U.S. Feb. 19, 2013).

According to McClanahan, Dellinger's two-month-old statement that Adkins did not have her permission to use her bulldozer, combined with information that the bulldozer was in use at the time of the seizure, provided probable cause to believe Adkins was violating Virginia's unauthorized use statute.[2] I disagree.

The Complaint alleges that some time after his interview of Dellinger and before his seizure of the bulldozer, McClanahan learned that Adkins had not, in fact, used the bulldozer on the occasions Dellinger had identified in her interview. McClanahan knew that two months had passed since his interview of Dellinger, and he had not received any additional complaints from Dellinger about unauthorized use of the bulldozer. Upon learning that Adkins was using the bulldozer at the Jackson Chapel Church site, a reasonable officer would have at

---

[2] The unauthorized use statute provides that

[a]ny person who shall take, drive or use any animal, aircraft, vehicle, boat or vessel, not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be guilty of a Class 6 felony . . . .

Va. Code Ann. § 18.2-102 (2009).

least verified the continuing lack of consent to use prior to making a warrantless seizure of the bulldozer.  As Adkins aptly notes, consent is transitory.  The fact that Adkins did not have permission to use the bulldozer at the time of the Dellinger interview did not create probable cause to believe that Adkins still did not have a right to use the bulldozer two months later.  Dellinger may have changed her mind and granted Adkins permission to use the bulldozer.

Ownership, like consent, is also subject to change over time.  The Complaint alleges that prior to speaking with McClanahan, Dellinger told Neo that Adkins planned to purchase the bulldozer if another buyer could not be found.  Thus, reasonable minds could infer, based on McClanahan's alleged interactions with Neo and Dellinger, that McClanahan knew it was possible that Adkins had purchased the bulldozer in the intervening two months.  Reasonable minds could also infer from the Complaint's averments that McClanahan knew that the sources of the allegations regarding unauthorized use of the bulldozer were Adkins's political opponents, who may have had a motive to be dishonest.

Moreover, on the face of the Complaint, there is no indication that McClanahan confirmed that the bulldozer in use at the Jackson Chapel Church site was the same bulldozer Dellinger claimed to own.

Considering all of the information available to McClanahan at the time of the seizure, the totality of the circumstances did not provide probable cause to

seize the bulldozer. Thus, based on the allegations in the Complaint, the plain view exception to the warrant requirement did not apply. Adkins has adequately alleged that McClanahan's warrantless seizure of the bulldozer violated Adkins's Fourth Amendment right to be free from unreasonable seizures.

Having found that the plaintiff has alleged a violation of a right, I must next determine whether that right was clearly established at the time of the seizure. I find that it was. The Supreme Court and Fourth Circuit precedents requiring probable cause for a warrantless seizure pursuant to the plain view exception have existed for many years. *See, e.g.*, *Hicks*, 480 U.S. 321; *Jackson*, 131 F.3d 1105. Similarly, the "totality of the circumstances" test for probable cause has been controlling law since at least 1983. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Thus, when McClanahan seized the bulldozer, Adkins had a clearly established right to be free from a warrantless seizure of his property that was unsupported by probable cause, which right under the facts alleged would be reasonably apparent to a police officer. Based solely on the allegations in the Complaint, therefore, I hold that the defense of qualified immunity is inapplicable.

I emphasize that I merely hold that Adkins's Fourth Amendment claim is sufficient to survive a motion to dismiss. *See Tobey v. Jones*, 706 F.3d at 387 ("A Rule 12(b)(6) motion to dismiss 'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'") (quoting *Republican Party of*

*N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Following discovery, at the summary judgment phase, the evidence may support the application of qualified immunity.   At this time, however, the Complaint does not support dismissal of Adkins's Fourth Amendment claim on that basis.

Adkins also objects to the magistrate judge's recommendation that I dismiss his First Amendment claim.  To state a First Amendment retaliation claim,[3] Adkins must allege facts showing that (1) he engaged in constitutionally protected speech, (2) McClanahan took retaliatory action that adversely affected Adkins's protected speech, and (3) "'a causal relationship exists between [Adkins's] speech and [McClanahan's] retaliatory action.'"   *Tobey*, 706 F.3d at 387 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000)).

Speech connected with a campaign for public office is protected by the First Amendment.  *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2816-17 (2011).  Therefore, the first element of the claim is satisfied.

To establish that McClanahan's alleged retaliatory action adversely affected Adkins's speech, Adkins must aver facts showing that "a similarly situated person

---

[3]  The Complaint does not clearly identify the theory upon which Adkins bases his First Amendment claim.   Rather, the Complaint merely states that "the seizure, in conjunction with Plaintiff's political opponents, was done in an effort to violate his First Amendment rights of free speech and political association, utilizing the power of the state to unlawfully and wrongfully interfere with his political campaign." (Compl. ¶ 23.) The magistrate judge, however, analyzed the claim as a retaliation claim, and Adkins's arguments in his memorandum and at oral argument were based upon that legal theory.

of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) (internal quotation marks and citation omitted). This is a fact-sensitive inquiry that requires the court to consider "'the status of the speaker, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts.'" *Id.* (quoting *Suarez*, 202 F.3d at 686). "[A] chill is likely when the state actor has 'engaged the punitive machinery of the government in order to punish' an individual for speaking out." *Ruttenberg v. Jones*, 283 F. App'x 121, 130 (4th Cir. 2008) (unpublished) (quoting *Blankenship*, 471 F.3d at 531).

Here, Adkins was a private citizen and political candidate, and McClanahan was a state police officer. Adkins alleges that McClanahan, in retaliation for Adkins's political speech, physically seized the bulldozer on which the political speech was displayed and removed it from public view. There is no question that this allegation, if true, states a retaliatory action that adversely affected Adkins's protected speech. Such a criminal seizure by a law enforcement officer has possibly the most direct adverse effect imaginable: Adkins's political signs, which he displayed on the bulldozer for the public to see, were allegedly taken out of public view entirely when the bulldozer was impounded. A person of ordinary firmness who had once had his personal property seized in retaliation for

exercising his free speech rights would certainly be chilled in exercising those same rights in the future, lest further retaliatory action be taken. *Cf. Garcia v. City of Trenton, Mo.*, 348 F.3d 726 (8th Cir. 2003) (finding retaliatory issuance of parking tickets would be sufficient to chill the speech of a person of ordinary firmness). Adkins's Complaint thus satisfies the second element.

Adkins's First Amendment retaliation claim fails, however, with respect to the third element. The alleged retaliation is only actionable if Adkins can show that but for his exercise of his First Amendment rights, McClanahan would not have seized the bulldozer. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (explaining that "retaliation is subject to recovery as the but-for cause of official action offending the Constitution"); *Tobey*, 706 F.3d at 390-91. The Complaint's averments belie this conclusion. The allegations in the Complaint support the inference that McClanahan seized the bulldozer because he believed, albeit without probable cause, that Adkins was using the bulldozer when he did not have the owner's consent to do so. There is no indication that McClanahan himself had any political animus towards Adkins that would lead him to punish Adkins for his political speech. The allegations are also insufficient to establish a conspiracy between McClanahan, Neo, and the Halls to retaliate against Adkins for his political speech. *See Ruttenberg*, 283 F. App'x at 131-32 (affirming dismissal of § 1983 conspiracy claim where "[n]o common purpose [was] alleged and nothing

-14-

beyond conclusory allegations of conspiracy [were] made"). Viewing the allegations in a light favorable to Adkins, the Complaint does not aver the kind of rigorous but-for causation required to state a claim for First Amendment retaliation.

Because I find that Adkins has failed to adequately plead an actionable violation of his First Amendment rights, I also find that McClanahan is entitled to qualified immunity with respect to Adkins's First Amendment claim. Therefore, Adkins's First Amendment claim must be dismissed.

## III

For the foregoing reasons, it is **ORDERED** as follows:

1. The plaintiff's objections to the Report and Recommendations of the magistrate judge (ECF No. 20) are GRANTED IN PART and DENIED IN PART;

2. The Report and Recommendations of the magistrate judge (ECF No. 17) are ACCEPTED IN PART and REJECTED IN PART; and

3. The defendant's First Motion to Dismiss for Failure to State a Claim (ECF No. 5) is GRANTED IN PART AND DENIED IN PART;

4.  The plaintiff's causes of action based upon violation of his First Amendment, Fifth Amendment, or Equal Protection rights are DISMISSED; and

5.  The plaintiff's cause of action based upon a violation of his Fourth Amendment rights is not dismissed.


ENTER:  March 11, 2013

/s/  James P. Jones
United States District Judge