# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TREY ADKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00034 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MARCUS McCLANAHAN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiff; Katherine DeCoster, Assistant Attorney General, Office of the Attorney General of Virginia, Abingdon, Virginia, for Defendant.*

In this action arising under 42 U.S.C.A. § 1983 (West 2012), the plaintiff seeks money damages against the defendant, a state police officer, who seized the plaintiff's bulldozer without a warrant or other court order. The defendant officer has moved for summary judgment, asserting he is entitled to qualified immunity and the undisputed facts show he did not violate the plaintiff's Fourth Amendment rights. Because I find that there are disputes of material fact that must be resolved by a jury, I will deny the defendant's motion.

I

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to the plaintiff.[1]

At the time of the incidents at issue, the plaintiff, Trey Adkins, was in the business of excavation and construction. He was also at the time the Democratic Party candidate for the Buchanan County, Virginia, Board of Supervisors. Terry Hall was the Republican incumbent in that position and was seeking reelection. Tamara Neo, the Buchanan County Commonwealth's Attorney, was running for reelection as the Republican candidate. The defendant, Marcus McClanahan, was an investigator with the Virginia State Police.

In July 2011, Neo asked McClanahan to contact Shelia Dellinger about the possible unauthorized use of a bulldozer. Neo told McClanahan that the bulldozer belonged to Dellinger and that Adkins, who was storing the bulldozer, had been

---

[1] In support of his Motion for Summary Judgment, McClanahan has submitted a copy of his own deposition and his affidavit; a handwritten report he allegedly made after interviewing Shelia Dellinger; a police Calls for Service ("CFS") report dated September 13, 2011; a printed copy of a Facebook message exchange between Dellinger and Tamara Neo; Dellinger's deposition; a copy of a cashier's check made payable to Dellinger; a bill of sale for a 1996 John Deere Series IV Crawler Dozer; and the plaintiff's deposition.

The plaintiff has not filed a response to the defendant's Motion for Summary Judgment. However, even in the absence of a response, "the moving party must still show that the uncontroverted facts entitle the party to a judgment as matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (internal quotation marks omitted).

using it without Dellinger's authorization.  McClanahan had already been investigating Adkins for alleged improper voter solicitation, though he ultimately concluded those allegations were unfounded.  McClanahan called Dellinger, who explained that Adkins was storing the bulldozer as a favor to her and was considering buying the bulldozer.  Dellinger informed McClanahan that Terry Hall had told her that Adkins was using the bulldozer and profiting from his use of it.  McClanahan asked Dellinger how many hours had been logged on the bulldozer before McClanahan began storing it, but she did not know the answer.

Dellinger told McClanahan that Adkins had offered to purchase the bulldozer for $20,000, but she did not accept that offer because she still owed $30,000 on the bulldozer.  Adkins had recently told her that he was waiting to hear about a loan from the bank.  Dellinger commented to McClanahan that she did not think Adkins was going to buy the bulldozer.

McClanahan asked Dellinger if Adkins had her permission to use the bulldozer while he was storing it.  According to Dellinger, she replied that Adkins could use the bulldozer to ensure that it worked well, but he did not have permission to take it to distant job sites.  At her deposition, in response to questioning about Hall's statements regarding Adkins's alleged use of the bulldozer, Dellinger testified, "Well, see, we were still in the process of making the agreement, him getting his money together.  So, I mean, it was okay with me."

(Dellinger Dep. 17). According to McClanahan, however, Dellinger told him that Adkins did not have her permission to use the bulldozer at all. McClanahan contends that Dellinger wanted to file a criminal complaint for unauthorized use and instructed him to take the bulldozer away from Adkins if he found Adkins using it. Dellinger denies this. McClanahan claims that he told Dellinger to call him if she sold the bulldozer.

A few days after her conversation with McClanahan, Dellinger spoke to her son, who told her that there had been 3,700 hours logged on the bulldozer prior to the time that McClanahan took possession of it.[2] Dellinger called McClanahan to give him this information. She had no further contact with McClanahan regarding the bulldozer. McClanahan later determined that contrary to Hall's claims, Adkins had not used the bulldozer at Poplar Gap. Nonetheless, McClanahan asserts that he had evidence that Adkins had used the bulldozer elsewhere.

Approximately one month later, unbeknownst to McClanahan, Adkins purchased the bulldozer from Dellinger. The following month, McClanahan received a call informing him that Adkins was using Dellinger's bulldozer at a church in Pawpaw, Virginia. According to McClanahan, he attempted to call Dellinger to confirm that she wanted the bulldozer seized, but she did not answer

---

[2] The record at times indicates that the number of hours was 37 and at other times indicates that the number was 3,700. This distinction is unimportant to resolution of the summary judgment motion.

-4-

the telephone. He also sent a local police officer to her home, but she did not come to the door.

McClanahan then went to the church, where he observed a partially bulldozed road and a bulldozer present on the property. He spoke with someone at the church, who informed him that Adkins had delivered the bulldozer and that the person who had been operating the bulldozer was working for Adkins. McClanahan compared identification numbers to verify that the bulldozer was, in fact, the same one that Dellinger had indicated she owned. McClanahan then seized the bulldozer and had it towed away. According to Adkins, his political campaign signs were posted on the bulldozer and his political opponents spread word of the police seizure of the bulldozer, causing him embarrassment.

After the seizure, Adkins received a call from someone at the church telling him that his bulldozer had been removed from the premises. Adkins found McClanahan and presented the bill of sale and a copy of the cashier's check he had given to Dellinger to show that he had purchased the bulldozer. McClanahan indicated that it would be some time before he could have the bulldozer towed back to the church, so Adkins stated that he would retrieve the bulldozer himself. Adkins was never arrested or charged with unauthorized use of the bulldozer.

Adkins commenced this §1983 action, alleging that McClanahan violated his Fourth Amendment right to be free from unreasonable seizures. Following the

completion of discovery, McClanahan has moved for summary judgment. McClanahan asserts that the undisputed facts show that his warrantless seizure of the bulldozer was permitted by the "plain view" doctrine because, given the circumstances, the incriminating nature of the bulldozer was immediately apparent when he saw it in use at the church. McClanahan also argues that he is entitled to absolute governmental immunity or, in the alternative, to qualified immunity, because he did not violate any clearly established constitutional right. For the reasons set forth below, I disagree.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(a). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989). Applying these standards, the defendant's motion for summary judgment must be denied.

A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford,* 119 F.3d 1156, 1159-60 (4th Cir. 1997). While state officials sued in their official capacities are not "persons" under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), state officials sued in their individual capacities are "persons" within the meaning of the statute and are not absolutely immune from suit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991). A government official sued in his individual capacity under § 1983 may, however, be entitled to qualified immunity. *Id.* at 25 ("[O]fficials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.").

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty., Md.*, No. 11-2192, 2013 WL 388125, at \*4 (4th Cir. Feb. 1, 2013). Qualified immunity is immunity from suit rather than merely immunity from liability; therefore, the question of qualified immunity should be decided before trial. *Id.* A defendant asserting qualified immunity has the burden of proving the defense. *Id.* A court deciding the applicability of qualified immunity must determine "whether a constitutional violation occurred" and "whether the right

violated was clearly established." *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).

The Fourth Amendment to the Constitution prohibits unreasonable seizures of a person's effects. U.S. Const. amend. IV. Property is seized whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466, U.S. 109, 113 (1984). As a general rule, a seizure of personal property is "*per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983).

An exception to the general warrant requirement, known as the plain view exception, applies where (1) an officer views the item to be seized from a place where he is lawfully present, (2) the officer has a lawful right of access to the seized item, and (3) the incriminating character of the seized item is immediately apparent. *Horton v. California*, 496 U.S. 128, 137 (1990). "[O]nly those items that are perceived to be contraband, stolen property, or incriminating in character" may be seized without a warrant under the plain view exception. *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997). The "immediately apparent" requirement means that police must have probable cause to believe the item is associated with criminal activity. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

"[P]robable cause is a flexible, common-sense standard" that "requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). Probable cause does not require certainty, nor does it require that the seized evidence is more likely than not to be contraband, stolen property, or evidence of a crime. *Id.* Probable cause does, however, require more than reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330 (1990). In evaluating whether probable cause existed to support a seizure, the court must assess the totality of the circumstances. *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013).

Whether McClanahan is entitled to qualified immunity depends upon whether the summary judgment record, viewed in the light most favorable to the plaintiff, shows that McClanahan did not violate Adkins's right to be free from an unreasonable seizure of his property.[3]

---

[3] McClanahan also asserts that he is entitled to sovereign immunity. While the Complaint does not expressly indicate that he is being sued in his individual rather than his official capacity, the circumstances show that he is being sued in his individual capacity, and thus the defense of sovereign immunity does not apply. *See Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir. 1995) (holding that when the plaintiff does not specially allege capacity, the court must examine the nature of the claims made and the course of the proceedings to determine whether a state official is being sued in a personal or an official capacity). For example, the Complaint here seeks compensatory damages, which would be unavailable in an official capacity suit; the plaintiff does not allege any official policy or custom as grounds of liability, but only individual acts; and the

McClanahan contends the undisputed facts show that at the time of the seizure, he had probable cause to believe that Adkins was engaged in the Virginia crime of unauthorized use and that the bulldozer was the subject of that unauthorized use.[4] A dispute of material fact exists, however, as to whether Dellinger told McClanahan that Adkins was not permitted to use the bulldozer. Dellinger's deposition testimony is in conflict with McClanahan's deposition testimony on that point, and a trial is necessary so that a jury can weigh the conflicting testimony, judge the witnesses' credibility, and resolve the factual dispute. Moreover, McClanahan testified at his deposition that prior to seizing the bulldozer, he twice attempted to contact Dellinger to confirm that she still owned it and Adkins still was not permitted to use it. A jury might infer from this admission that McClanahan understood that the circumstances may have changed since he had spoken to Dellinger two months earlier. Nevertheless, he proceeded to seize

---

defendant has asserted qualified immunity, applicable only in individual capacity claims. *See id.*

[4] The unauthorized use statute provides that

> [a]ny person who shall take, drive or use any animal, aircraft, vehicle, boat or vessel, not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be guilty of a Class 6 felony . . . .

Va. Code Ann. § 18.2-102 (2009).

the bulldozer without waiting to hear from Dellinger.  Therefore, even if one accepts McClanahan's testimony as true, McClanahan has not shown that he is entitled to judgment as a matter of law.

Because there is a dispute of material fact that prevents me from deciding the applicability of the plain view doctrine as a matter of law, I must deny the motion for summary judgment.  Similarly, McClanahan has not met his burden of proving that he is entitled to qualified immunity because I cannot find as a matter of law that he did not violate Adkins's clearly established constitutional right to be free from unreasonable seizures of his effects.[5]

### III

For the reasons stated, it is **ORDERED** that the defendant's Motion for Summary Judgment (ECF No. 34) is DENIED.

ENTER: June 14, 2013

/s/ James P. Jones
United States District Judge

---

[5] I previously ruled that Adkins's Fourth Amendment right to be free from an unreasonable seizure of his property was clearly established at the time McClanahan seized the bulldozer. *Adkins v. McClanahan*, No. 1:12CV00034, 2013 WL 942323, at *5 (W.D. Va. Mar. 11, 2013).